UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x

U.S. BANK, N.A.,                          **MEMORANDUM AND ORDER**

                    Plaintiff,            10-cv-3381 (KAM)(RML)

          -against-

ANNITH BYRD, WAYNE BYRD, HARVESTIME
TABERNACLE, INC., CARMEN FAIRCLOUGH,
TRAVELENE NECKLES, JACQUELINE SIMPSON,
RUPERT WYNTER, MELVYN DUNKLEY, and
NORRIS WYNTER,

                    Defendants.

------------------------------------------x
**MATSUMOTO, United States District Judge:**

          Plaintiff U.S. Bank, N.A. ("plaintiff") seeks to

foreclose on a $1,575,000 mortgage secured by a commercial

property located at 501-509 East 78th Street in Brooklyn, New

York.  This court has subject-matter jurisdiction in this action

pursuant to 28 U.S.C. § 1332.  Pending before the court is

plaintiff's motion for summary judgment on its claim for

foreclosure and application for attorneys' fees and costs.

          For the reasons set forth below, the court: (1) grants

summary judgment to plaintiff against the remaining defendants,

Annith Byrd, Wayne Byrd, Harvestime Tabernacle, Inc., Carmen

Fairclough, Travelene Neckles, Jacqueline Simpson, Rupert

Wynter, Melvyn Dunkley, and Norris Wynter; (2) orders the

foreclosure and sale of the property located at 501-509 East

1

78th Street in Brooklyn, New York[1]; (3) awards plaintiff a total of $19,858.00 in attorneys' fees and $1,475.84 in costs up to and including plaintiff's motion for summary judgment; and (4) directs plaintiff to submit, by February 29, 2012, supporting documentation and calculations to enable the court to assess the amount due and outstanding under the Note and Mortgage, and orders that defendants who wish to respond shall do so by March 7, 2012.

## BACKGROUND

The following facts are undisputed and viewed in the light most favorable to the defendants.[2]  The real property at issue in this case is located at 501-509 East 78th Street in

---

[1] This court appointed a receiver for the Property on March 17, 2011.  (*See* ECF No. 49, Order Appointing Receiver.)

[2] Local Civil Rule 56.1(a) mandates that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Under Local Civil Rule 56.1(b), "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party."  Although plaintiff complied with the requirements of Local Civil Rule 56.1(a), defendants failed to comply with Local Rule 56.1(b) and instead provided their own version of certain facts in the form of a declaration from defendant Wayne Byrd.  Accordingly, in its broad discretion and based on the undisputed admissible evidence presented by the plaintiff in support of its motion, the court finds all facts in plaintiff's Rule 56.1 statement to be established and undisputed, as it is entitled to do pursuant to Local Civil Rule 56.1(c).  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (deeming admitted all material facts contained in an unopposed Rule 56.1 statement); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.")

Brooklyn, New York ("the Property").  (ECF No. 53, Plaintiff's Statement of Undisputed Material Facts ("Pl.'s 56.1") ¶ 4.[3])  The Property is also known as "1567 Ralph Avenue."  (*Id.*)

On February 9, 2007, defendant Annith Byrd executed a promissory note (the "Note"), promising to pay Greenpoint Mortgage Funding Inc. ("Greenpoint") a principal sum of $1,575,000.  (*Id.* ¶¶ 1-2.)  On the same date, defendants Annith and Wayne Byrd (the "Byrd defendants") executed and delivered to Greenpoint an assignment of rents, security agreement, and commercial mortgage (collectively, the "Mortgage") on the Property as security for the loan.  (*Id.* ¶ 3.)  The Mortgage, which is a lien on the Property, was recorded in the Office of the Register of the City of New York, County of Kings (the "Register's Office"), on November 30, 2007.  (*Id.* ¶¶ 4-5.)

On February 28, 2008, Greenpoint assigned the Note, Mortgage, and all related loan documents to Park National Bank ("Park National").  (*Id.* ¶ 8.)  The assignment to Park National was recorded in the Register's Office on August 5, 2008.  (*Id.* ¶ 9.)  On July 20, 2010, the Federal Deposit Insurance Corporation (FDIC), as receiver for Park National, assigned the Note and Mortgage to plaintiff.  (*Id.* ¶ 11.)  The assignment to plaintiff was recorded in the Register's Office on August 12, 2010.  (*Id.* ¶ 12.)  As such, plaintiff is the holder of the

---

[3] References to paragraphs of the plaintiff's Rule 56.1 statement include materials cited therein and annexed thereto.

Note, the Mortgage, and all the other related loan documents. (*Id.* ¶ 14.)

The Byrd defendants failed to make the payment due under the Note and Mortgage on April 1, 2010, and have not made any payments toward the amounts due under the Note and Mortgage since that time. (*Id.* ¶¶ 15-16.) On July 23, 2010, plaintiff filed the instant foreclosure action. (*See* ECF No. 1, Complaint ("Compl."). On April 12, 2011, plaintiff filed an amended complaint against the Byrd defendants; Harvestime Tabernacle, Inc. ("Harvestime"), a church that is located on the Property; and Carmen Fairclough, Travelene Neckles, Jacqueline Simpson, Rupert Wynter, Melvyn Dunkley, and Norris Wynter (collectively, "defendants"), a group of individuals whom plaintiff believes are in charge of Harvestime. (*See* ECF No. 29 Amended Complaint ("Am. Compl.") ¶¶ 1-13.) The Amended Complaint also named as defendants Dr. Joel Brick, Dr. Joshua Gindea, Bonnii Gargano, G.B.W. Glenwood Dental Administrators, Inc., and the Environmental Control Board of The City of New York, although plaintiff voluntarily dismissed its claims as to each of those defendants before moving for summary judgment. (*See* ECF Nos. 40, 41, 43, 46, Notices and Orders of Voluntary Dismissal.)

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine issue as to any material fact." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

Thus, the court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  When ruling on a summary judgment motion, the district court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 780 (2d Cir. 2003).

In a motion for summary judgment, the moving party carries the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156,

160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted).  To defeat a summary judgment motion, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.

## II.  Defendants' Opposition

In opposition to plaintiff's motion, defendants do not dispute that the Byrd defendants executed the Note and Mortgage and have been "incapable of making payments on the loan as of April 1, 2010."  (ECF No. 58, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Opp'n") at 4.[4])  Nevertheless, they urge the court to deny plaintiff's motion for summary judgment because "there exists a triable issue of fact as to whether the mortgage is invalid pursuant to New York Religious Corporations Law Section 12," which requires prior court approval for the mortgage of any real property of a religious corporation.  (*Id.* (citing N.Y. Relig. Corp. Law § 12(1)).)

Defendants do not dispute that defendant Harvestime is not named in and is not a party to either the Note or Mortgage as a mortgagor or borrower, and defendants concede that Greenpoint "offer[ed] the mortgage to me [Wayne Byrd] and my

---

[4] This number refers to the page number assigned by the Electronic Case Filing (ECF) System because this document was not paginated by the Byrd defendants.

wife [Annith Byrd] specifically." (ECF No. 58-1, Declaration of
Wayne Byrd ("Byrd Decl.") ¶ 10.) Defendants assert, however,
that before Greenpoint issued the Note and Mortgage to the Byrd
defendants, Greenpoint requested, reviewed and relied upon
Harvestime's financial documents because Greenpoint was aware
that the Byrds' financial means were inadequate to cover the
monthly payments due under the Note and Mortgage. (Defs.' Mem.
at 6-7; Byrd Decl. ¶¶ 4-11.) Consequently, defendants argue,
(1) Harvestime is in fact a party to the Mortgage; (2) the
Mortgage involves real property owned by a religious corporation
and is therefore subject to New York Religious Corporations Law
Section 12(1); and (3) there is a genuine issue of material fact
regarding the validity of the Mortgage because the mortgage was
not previously approved by a court as required by New York
Religious Corporations Law Section 12(1). (Defs.' Mem. at 6-7.)

　　　　Defendants' argument fails because it presupposes that
Harvestime was a religious corporation when the Mortgage was
executed, but defendants provide no admissible evidence to
support that assertion.[5] In the absence of any evidence of
Harvestime's putative status as a religious corporation,
defendants lack a basis to claim that the Mortgage could be

---

[5] At most, Wayne Byrd states in his April 4, 2011 declaration that Harvestime
"recently" obtained status as a 501(c)(3) non-profit corporation (*see* Byrd
Decl. ¶ 12), but that does not amount to admissible evidence that Harvestime
was a "religious corporation" within the meaning of New York Religious
Corporations Law, whether at the time the Byrd defendants executed the
Mortgage or otherwise.

invalid for failure to comply with New York Religious
Corporations Law Section 12(1).

### III. Defendants' Affirmative Defenses

The court finds unavailing all of defendants'
affirmative defenses, which are set forth in their Answer to the
Amended Complaint (*see* ECF No. 32 ("Answer")).  Defendants
assert as a first affirmative defense that plaintiff lacks
standing to bring this action because plaintiff "was not the
legal owner of the Note and/or Mortgage at the time it commenced
this action."  (*Id.* ¶ 4.)  The undisputed facts demonstrate that
defendants' affirmative defense is not supported and, indeed, is
contradicted by the undisputed evidence in the record.  The
court has reviewed the relevant assignment and recording
documents and finds that plaintiff became the owner and holder
of the Note and Mortgage on July 20, 2010, three days before
plaintiff commenced this action.  Accordingly, defendants' first
affirmative defense lacks merit.

Defendants' second, third, and fourth affirmative
defenses allege that plaintiff failed to comply with various
provisions in New York Real Property Actions and Proceedings Law
("RPAPL") §§ 1302 and 1304.  (*See* Answer ¶¶ 5-7.)  As plaintiff
points out, however, RPAPL §§ 1302 and 1304 apply only to
actions relating to a "high-cost home loan," or a "subprime home
loan," as those terms are defined by New York Banking Law §§ 6-1

and 6-m.  (*See* ECF No. 52, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, at 5.)  Under New York Banking Law §§ 6-l and 6-m, "high-cost home loans" and "subprime home loans" are, by definition, "secured by a mortgage or deed of trust on real estate . . . used or occupied or intended to be used or occupied . . . as the home or residence of one or more persons."  The undisputed facts establish that the Property is commercial, not residential, real estate.  Accordingly, RPAPL §§ 1302 and 1304 do not apply to the Note and Mortgage, and defendants' second, third, and fourth affirmative defenses lack merit.

Defendants' fifth affirmative defense alleges that plaintiff failed to comply with New York Banking Law §§ 595-a, 6-l, and 6-m.  (Answer ¶ 8.)  Because New York Banking Law § 595-a regulates mortgage bankers and mortgage brokers of *residential* mortgage loans, not commercial loans, it does not apply to plaintiff, the owner and holder of a commercial mortgage loan.  Furthermore, as discussed *supra*, New York Banking Law §§ 6-l and 6-m do not apply to plaintiff.  Consequently, plaintiff's fifth affirmative defense also lacks merit.

Accordingly, the court finds that defendants have not raised any genuine issue of material fact or legal defense to defend against plaintiff's motion for summary judgment.

## IV.  U.S. Bank is Entitled to Summary Judgment

### A. Foreclosure of the Property

The choice-of-law provisions in the Note and Mortgage indicate that both are governed by the law of the "jurisdiction in which the Land is located." (*See* ECF No. 53-1, Promissory Note ("Note") ¶ 17; ECF No. 53-2, Mortgage, Assignment of Rents and Security Agreement ("Mortgage") ¶ 30.)  Therefore, the court applies New York law in adjudicating the instant motion.

"Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." *Builders Bank v. Warburton River View Condo LLC*, No. 9 CV 5484, 2011 WL 6370064, at *2 (S.D.N.Y. Dec. 20, 2011) (citing *Regency Savs. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001)); *FGH Realty Credit Corp. v. VRD Realty Corp.*, 647 N.Y.S. 2d 229, 230 (2d Dep't 1996) (same).  "Once plaintiff has established its prima facie case by presenting the note, mortgage, and proof of default, the mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the mortgagor." *Builders Bank*, 2011 WL 6370064, at *2 (citing *Regency Savs. Bank*, 139 F. Supp. 2d at 465-66).

Here, plaintiff has provided the court with the Note, Mortgage, and assignment documents.  It is undisputed that the Byrd defendants are bound by the obligations arising under those documents.  Moreover, as discussed *supra*, defendants have failed to raise a genuine issue of fact regarding plaintiff's claim that Annith and Wayne Byrd were the *only* defendants who assumed such obligations.  Furthermore, the parties do not dispute that the Byrd defendants defaulted on the Note and Mortgage by failing to make timely payments of the principal and interest due on April 1, 2010.

Plaintiff has satisfied the requirements for a prima facie case of foreclosure, and there is no genuine dispute as to any material fact.  Accordingly, the court grants summary judgment to plaintiff and orders foreclosure and sale of the Property.

### B. Amounts Due Under the Note and Mortgage

In addition to a judgment of foreclosure and sale, plaintiff seeks to recover $1,532,921.14 in principal; $5,262.47 in late charges; $15,329.21 for a prepayment premium; $61,933.20 in advances for payment of taxes and insurance; $119,360.26 in interest from March 1, 2010 to February 16, 2011; interest on the Note and Mortgage, which continues to accrue from February 16, 2011 through the date of judgment at a rate of $345.97 *per*

*diem;* and attorneys' fees and costs.  (*See* ECF No. 51-2, Declaration of Kenneth Beck ¶ 20.)

Upon a finding of liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "[T]he court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Upon review of the documents plaintiff submitted in support of its motion for summary judgment, the court finds an adequate factual basis for an award of attorneys' fees and costs, as discussed *infra*.  The court also finds, however, that plaintiff has submitted insufficient information to support plaintiff's request for other amounts due under the Note and Mortgage.  Accordingly, plaintiff shall submit additional affidavits, documents, and calculations to demonstrate the accuracy of its proposed damages by February 29, 2012.  Any defendant who wishes to oppose the plaintiff's calculations must do so by March 7, 2012.

## C. Attorneys' Fees and Costs

Under the terms of the Note and Mortgage, plaintiff is entitled to attorneys' fees incurred in the instant action. (*See* Note ¶ 11; Mortgage ¶ 43.)  Consequently, plaintiff requests $35,530.51 in attorneys' fees for 85.01 attorney hours spent, and necessary disbursements made, in prosecuting this claim.  (ECF No. 51-3, Declaration of Joseph Aronauer ("Aronauer Decl.") ¶¶ 8-13.)  Defendants have not objected to plaintiff's application for attorneys' fees.

### 1. Fees

A determination of the appropriate award for attorneys' fees rests soundly within the discretion of the district court.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged."  *Morin v. Nu-Way Plastering Inc.*, No. 03-CV-405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

### a. Reasonable Hourly Rate

"In determining the reasonableness of attorney's fees . . . courts have generally used the lodestar method, in combination with the twelve factors articulated in *Johnson v.*

*Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1971)."[6]

*Emerald Invs., LLC v. Porter Bridge Loan Co.*, No. 05-CV-1598, 2007 WL 1834507, at *1, 5 (D. Conn. 2007).  In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 484 F.3d 162 (2d Cir. 2007), *amended*, 493 F.3d 110 (2d Cir. July 12, 2007), however, the Second Circuit explained that the better course is:

> for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that hourly rate to

---

[6] The twelve factors are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Emerald Invs.*, 2007 WL 1834507, at *5 (citing *Johnson*, 488 F.2d at 717-19).

> calculate what can properly be termed the
> "presumptively reasonable fee."

*Arbor Hill*, 493 F.3d at 190.  "After determining the amount of
the presumptively reasonable fee, the court may use its
discretion to increase or reduce the amount based on the
particular circumstances of the case."  *Emerald Invs.,* 2007 WL
1834507, at *5 (quoting *Chan v. Sung Yue Tung Corp.*, No. 03-CV-
6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007)).

In addition, "[t]he Supreme Court directed that
district courts should use the prevailing market rates in the
community in calculating the lodestar, or what the Second
Circuit is now calling the 'presumptively reasonable fee.'"
*Lynch v. Town of Southampton*, No. CV 05-4499, 2007 WL 1876501,
at *12 (E.D.N.Y. June 27, 2007) (citing *Blum v. Stenson*, 465
U.S. 886, 895 (1984)).  The community is defined as the district
in which the court sits.  *See Arbor Hill*, 493 F.3d at 110;
*Lynch*, 2007 WL 1876501, at *12; *Polk v. N.Y. State Dep't of
Corr. Serv.*, 722 F.2d 23, 25 (2d Cir. 1983) (same).

In the Eastern District of New York, hourly rates
range from approximately $300 to 400 per hour for partners, $200
to $300 per hour for senior associates, and $100 to $200 per
hour for junior associates.  *See Konits v. Karahalis*, 409 F.
App'x 418, 422 (2d Cir. 2011) (affirming district court decision
holding that prevailing rates for experienced attorneys in the

Eastern District of New York range from approximately $300 to
$400 per hour); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-
4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting
hourly rates of $300-$450 for partners, $200-$300 for senior
associates, and $100-$200 for junior associates); *Local 282,
Int'l Bhd. of Teamsters v. Pile Found. Constr. Co.*, No. 09-cv-
4535, 2011 WL 3471403, at *12 (E.D.N.Y. Aug. 5, 2011) (quoting
*Szczepanek v. Dabek*, No. 10-CV-2459, 2011 WL 846193, at *8
(E.D.N.Y. Mar. 7, 2011)) (noting that "[r]ecent prevailing
hourly rates in the Eastern District" are $200-$400 for partners
and $100-$295 for associates); *Crapanzano v. Nations Recovery
Ctr., Inc.*, No. 11-CV-1008, 2011 WL 2847448, at *2 (E.D.N.Y.
June 29, 2011) (noting hourly rates of $200-$350 for partners,
$200-$250 for senior associates with four or more years of
experience, and $100-$150 for junior associates with one to
three years of experience), *adopted by* 2011 WL 2837415 (E.D.N.Y.
July 14, 2011); *Gutman v. Klein*, No. 03-CV-1570, 2009 WL
3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates
of $300-$400 for partners, $200-$300 for senior associates, and
$100-$200 for junior associates); *Carco Grp., Inc. v. Maconachy*,
No. CV 05-6038, 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011)
("In recent years, courts in this district have approved hourly
fee rates in the range of . . . $70 to $100 for paralegal
assistants."); *Szczepanek*, 2011 WL 846193, at *8 (surveying

16

cases and stating recent prevailing hourly rates in the Eastern District range between $70 and $80 for legal assistants).

Plaintiff's request for an award of attorneys' fees is based on the following hourly rates:

| Attorney | Hourly Rate (2010) | Hourly Rate (2011) |
|---|---|---|
| Joseph Aronauer, Esq. | $490 | $525 |
| John Re, Esq. | $440 | $465 |
| Kenneth Yudell, Esq. | N/A | $465 |
| Christopher Owens, Esq. | N/A | $360 |
| Andrew MacArthur, Esq. | $325 | N/A |

In addition, time spent by paralegals is based on an hourly rate of $145. (Aronauer Decl. ¶ 12.) The court finds that, in light of the attorneys' experience and other case-specific factors as articulated by the Second Circuit in *Arbor Hill*, the requested hourly rates are not reasonable in this district.

Mr. Aronauer is a litigation partner who was admitted to the bar in 1975; Mr. Re is a litigation partner who was admitted to the bar in 1988; and Mr. Yudell is a litigation partner who was admitted to the bar in 1992. (Aronauer Decl. ¶ 9.) Although each of these attorneys has decades of relevant experience, the court finds that their hourly rates, which range from $440 to $525, are not reasonable. As noted above, courts in this district have regularly awarded experienced attorneys hourly rates ranging from $300 to $400. *See, e.g., Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-

3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (finding that although counsel's requested hourly rate of $340 to $370 was "on the high side," it was reasonable given his 25 years of litigation experience and complete success on his client's claims at trial).

Similarly, the court finds unreasonable the requested hourly rates of $325-360 for services rendered by Mr. Owens and Mr. MacArthur, litigation associates who were admitted to practice in 2006 and 2008, respectively. (*See* Aronauer Decl. ¶ 9.) As another court in this district noted in *Crapanzano*, 2011 WL 2847448, at *2, hourly rates of $200-$250 for senior associates with four or more years of experience prevail in this district. Moreover, the instant case did not pose complex issues of law warranting a heightened hourly fee award; rather, it involved a straightforward mortgage default.

Based on the prevailing rates in this district, and in light of each attorney's experience and the facts and circumstances in this case, the court finds that reasonable hourly rates in this case are as follows:

| Attorney | Hourly Rate |
|---|---|
| Joseph Aronauer, Esq. | $350 |
| John Re, Esq. | $325 |
| Kenneth Yudell, Esq. | $300 |
| Christopher Owens, Esq. | $225 |
| Andrew MacArthur, Esq. | $200 |

For the same reasons, the court finds that an hourly rate of $75 is reasonable for work performed by paralegals.

### b. Hours Reasonably Expended

The court next turns to the issue of whether the number of hours expended by Plaintiff's counsel was reasonable. A party seeking attorneys' fees "must support that request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Cablevision Sys. New York City Corp. v. Diaz*, No. CV-07-4340, 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002) (quoting *Carey*, 711 F.2d at 1154); *see also Kingvision Pay-Per-View v. The Body Shop*, No. 00 Civ. 1089, 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002) (denying award of attorneys' fees where information regarding how the fees were accumulated was not provided even though the requested amount of $1,000 was reasonable).

In determining the presumptively reasonable fee, a court should adjust the hours actually billed to a number the court determines to have been reasonably expended. *See Konits*, 409 F. App'x at 421. The number of hours claimed must be "supported by time records [and not be] excessive or duplicative." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 756, 764 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 434 (directing district courts to exclude hours not "reasonably expended"). In adjusting the number of hours, the court "must state its reasons

for doing so as specifically as possible." *LeBlanc-Sternberg*, 143 F.3d at 764 (citation omitted).

Plaintiff has provided the court with detailed contemporaneous time records documenting the hours worked by the attorneys and paralegals, and describing the work performed. (*See* Aronauer Decl. Exs. G & H.) In total, plaintiff accounted for 85.01 hours of work.[7] (*Id.*) Upon review of plaintiff's submissions, the court finds the number of hours to be excessive, given the routine nature and lack of complexity in this mortgage foreclosure action. Accordingly, the court will reduce the number of hours by 20 percent. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citation omitted) ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

Accordingly, incorporating the adjustments discussed above, the court awards plaintiff attorneys' fees in the amount of $19,858, calculated as follows:

---

[7] The breakdown of hours was as follows:  Mr. Aronauer billed 46.95 hours; Mr. Re billed 4.25 hours; Mr. Yudell billed 7.75 hours; Mr. Owens billed 9.5 hours; Mr. MacArthur billed 10.23 hours; and paralegals billed 6.33 hours. (Aronauer Decl. Exs. G & H.)

| Attorney/Personnel | Adjusted Hourly Rate | Adjusted Hours Billed | Total Adjusted Fee |
|---|---|---|---|
| Joseph Aronauer, Esq. | $350 | 37.6 | $13,160 |
| John Re, Esq. | $325 | 3.4 | $1,105 |
| Kenneth Yudell, Esq. | $300 | 6.2 | $1,860 |
| Christopher Owens, Esq. | $225 | 7.6 | $1,710 |
| Andrew MacArthur, Esq. | $200 | 8.2 | $1,637 |
| Paralegal | $75 | 5.1 | $383 |
| **Total** | | 68.1 | $19,858 |

## 2. Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05 CV 985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.* (citation omitted).

Plaintiff seeks reimbursement of costs in the amount of $1,801.92 for various disbursements. (Aronauer Decl. ¶ 13.) Although the application for reimbursement of costs attaches supporting documentation, the court's own review of plaintiff's invoices indicates that plaintiff's counsel wrote off a portion of that sum, and that the amount plaintiff actually paid for disbursements was $1,475.84, consisting of: (1) $385.00 in court filing fees; (2) $638.35 for service of process; (3) $116.50 for certified documents; (4) $200.00 for "Record POA & Assignment of

Mortgage; (5) and $135.99 for long-distance calls, photocopies and scanning, FedEx and United Lawyers Service, and postage. (*Id.* Exs. G & H.)  Defendants failed to object to plaintiff's application for costs.  Accordingly, because the court finds the application for reimbursement of costs reasonable and supported by documentation, the plaintiff is awarded $1,475.84 in costs.

## CONCLUSION

For the foregoing reasons, the court grants summary judgment to plaintiff against all defendants.  The court orders the foreclosure and sale of the property located at 501-509 East 78th Street in Brooklyn, New York, and awards plaintiff a total of $19,858.00 in attorneys' fees and $1,475.84 in costs.  In addition, the court directs plaintiff to submit, by February 29, 2012, supporting documentation and calculations to enable the court to assess the amount due and outstanding under the Note and Mortgage.  Any defendants who wish to respond shall do so by March 7, 2012.

SO ORDERED.


Dated:     Brooklyn, New York
           February 22, 2012


                          _____/s/_____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York

22